

FILED
RECEIVED
FEB 0 2 2010
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# FOR THE NINTH CIRCUIT
## At Tacoma

| | |
|---|---|
| **Steven Ruhl** <br><br> **Plaintiff** <br><br> v. <br><br> **Walmart Corporation, Store #3537** <br><br> **Defendants** | THE HONORABLE JUDGE <br><br> Case #: 10 - 5065 BHS <br><br> CAUSE FOR COMPLAINT |

## I. JURISDICTION

Plaintiff is a citizen of the State of Washington who brings this cause of action under 29 U.S.C. 158(a) and (b), 185; RCW 49.60; RCW 49.48.010; Americans With Disabilities Act (ADA); Fair Labor Standards Act (FLSA); the Family Medical Leave Act (FMLA); Title VII of the Civil Rights Act of 1964 and 1991; et al. Jurisdiction is conferred on this Court by 42 U.S.C. Section 2000 e-5. Equitable and other relief is sought under 42 U.S.C. Section 2000e-5(g).

## II. PARTIES

A. Walmart Corporation. Specifically, its store #3537, located at 7001 Bridgeport Way West, Lakewood WA 98499, 253-512-0949.



10-CV-05065-CMP

WE C.U. INVESTIGATIONS
Tacoma WA 98408
253-222-9600 / fax 474-5500

B.  Plaintiff reserves the right to add additional parties later. This includes—but by no means is limited to—those who aided the aforementioned in their discrimination of Plaintiff. Or who were in a position to help Plaintiff, but chose to do nothing about it, or exacerbated his suffering. Plaintiff reserves the right to proceed upon amended Complaint during trial.

## III. FACTS

1. Plaintiff formerly commenced some of his shifts at Walmart at approximately 3:00pm in the Electronics Department, along with two other employees. Their shifts overlapped a couple of other employees and the hourly manager Hazel.
2. Some days Plaintiff worked a full nine-hour day with one hour for lunch; other days, he worked fewer than nine hours, but still had a full hour for lunch.
3. Plaintiff suffers from Type II Diabetes.
4. In the Electronics Department, an employee had to be there with a key at all times in order to unlock the display cases.
5. Since three employees started work at the same time in the Electronics Department, one employee would go to lunch at 6:30pm; the next one at 7:00pm; and the third one at 7:30pm, when the first one returned from lunch.
6. Due to the fast-pace, or the amount of exercise necessary in the position, Plaintiff's blood sugar had started dropping at 6:30pm. He always had to eat at that time, or he would get light-headed, confused and start feeling ill.
7. One day Plaintiff was helping sell a large-screen television worth approximately $1,000 to a gentleman in Army fatigues just before 6:30pm. A female employee had finished the sale by recommending a Sanyo as a good-quality television. While other employees were about to retrieve the TV, Plaintiff reminded the hourly manager of the Electronics Department, Hazel, that he needed to go to lunch. Plaintiff had spoken to her recently about getting low blood sugar because he was/is diabetic. Even after telling her three times that he had to eat, Hazel insisted that he couldn't go on his federally-required break, because everyone else in the Department was going to get the television out of the back room, and then there wouldn't be anybody else left to staff the Electronics Department.
8. Since Plaintiff's blood sugar was low, he was having difficulty thinking and couldn't think of a way to change her mind. Hazel took four (4) other people with her—which was way more than required—and left Plaintiff alone to staff the Department.

a) The salaried manager Terry had recently changed the procedure for getting expensive LCD televisions from the back room. They were no longer kept on the bottom shelf where someone could carry them out to the cash register. They had been moved to the top shelf and employees weren't allowed to take them down without a lift which required a certified operator. An associate had to page for a Lift Operator to come to the Electronics Department. The problem was that it took a long time for them to arrive, if they ever did. Therefore, the customers would get impatient and leave instead of making the huge purchases.

b) Walmart was aware of Plaintiff's diabetes and low blood sugar, since he had told the managers and everyone in his department and had recorded it on Walmart's computer during a procedure called a "coaching," which is like being called to the principal's office in grammar school.

c) On one occasion, the timeclock had failed to read Plaintiff's badge, so it appeared as though he hadn't gone to lunch after four hours. Lakewood #3735 Walmart strictly enforced the four-hour lunch time, so he was called in for a coaching.

d) During a "coaching," Walmart uses its computer network to record the event. At the end of the coaching, employees are given a chance to type in their side of the event. Salaried manager Terry (who was in charge of the Electronics Department) and a second manager, Albequee, were present.

e) Plaintiff explained that he wouldn't have skipped a lunch, because of his diabetes. Plaintiff also stated that he wasn't sure why but his blood sugar had been dropping every day at 6:30pm, and it would feel like he was going to fall down in a faint. As a result, he had trouble concentrating after that point.

f) A few days prior to the incident, Plaintiff told Hazel, the hourly manager of the Electronics Department, that his mother had been acting strangely lately. She seemed to think he was more than one person and she would tell him what the other man or woman had done but it was something he had done. He also told her he was having low blood sugar at 6:30pm.

9. Plaintiff was left alone in the Electronics Department except for Matt in the Communications Department that shared the same register as Electronics. Plaintiff soon started breaking into a cold sweat, which is a sign of very low blood sugar. Although he could hardly stand without holding on to the counter, he still did his job the best he could. The Plaintiff told Matt, "If I pass out, tell the Paramedics that I have low blood sugar." The Plaintiff felt his life was in danger, as he had been a Laboratory Technician and knew that symptoms like this could be deadly. However,

his struggles to get out of debt were dependent on a steady income and he didn't want to lose his job.

10. Because Plaintiff felt he may soon need medical attention, he told the man in camouflage clothing how severe his condition was in the hopes that he could assist in saving his life. He tried to keep him entertained so that he wouldn't get bored and leave the store before the television that he already planned to purchase arrived in the Department leaving the Plaintiff alone to possibly die.

11. After a while, Plaintiff saw the salaried manager Terry and everyone else who should have been in that Department walking across the store toward the Garden Department. He assumed the operator of the lift was there and they were going after that person.
    a) At the same time there was a store meeting where everyone who wasn't needed in the store was required to go to the Garden Department to attend.

12. After what seemed like forever to Plaintiff, two female employees returned with a television. They soon determined that it was the wrong TV and ran away again.

13. Plaintiff kept trying to keep the man in camouflage clothing entertained so he wouldn't leave despite Plaintiff's weak physical and mental states. Then at 7:00pm, Jonathan—who normally went to lunch at 7:00pm while Plaintiff was halfway through his lunch, which started at 6:30pm—returned and shoved his keys (which employees weren't allowed to take to lunch) into Plaintiff's hands and ran to lunch. The Plaintiff couldn't respond quickly because of his mental and physical condition.

14. Plaintiff waited for what seemed like forever, during which time he was sure someone would have to call paramedics to revive him. Finally, at 7:30pm Hazel returned with the three (3) others (since Jonathan had already gone to lunch) and the right TV. Plaintiff handed her the keys and requested that she take over because he was overdue for his relief.

15. Plaintiff sat in the lunchroom eating and gradually felt better but was still weak and mentally hazy.

16. After his lunch, Plaintiff was returning to Electronics and was told to go to the office, where he was terminated because he was told that standing around conversing with customers was "unproductive."

17. After Plaintiff was let go, he would still get his mother's and his prescriptions at that same Walmart store. The salaried manager Albequee, who assisted with firing Plaintiff, taunted him saying, "You're not buying enough…"

## IV. CAUSES OF ACTION

1) Defendants intentionally violated laws in order to harm Plaintiff.
2) Defendants violated their own Policies in their Employee Handbook regarding Plaintiff.
3) Defendants set Plaintiff up for failure and then blamed their actions on Plaintiff.
4) Defendants discriminated Plaintiff by violating State and Federal laws in order to terminate him without the rights that he was entitled to.
5) Defendants gave Plaintiff the runaround and intentionally tried to harm him by keeping him from going to lunch when he was legally required to, and when he medically needed to.
6) Plaintiff was informed that he could come back to work at Walmart "in 30 days" if he signed a 2-inch by 8.5-inch piece of paper. Therefore, it is suspected that the store played some sort of "creative copying" to try to make it appear as though Plaintiff agreed to something he never even saw.
7) Any reasonable person would have been able to see that Plaintiff was suffering and could have done the right thing by ensuring that his rights were met. Plaintiff could have really been an asset to Walmart if given the opportunity and if his civil rights were met.

## V. RELIEF REQUESTED

Wherefore, Plaintiff demands:

1) The amount of money necessary to compensate for pain and suffering.
2) The amount of money needed to make up for the credit card payments that Plaintiff could no longer make out of the paychecks he received after his termination from Walmart.
3) The amount of damages Plaintiff needs to recover from having a termination on his record.
4) The amount of money needed to make Plaintiff whole by enabling him to purchase a similar lot of waterfront property to the one he had to sell to try to purchase basic necessities after he lost his job at Walmart.
5) Any other damages this Court deems appropriate and just.

Respectfully submitted under oath on this First day of February 2010,

*[signature]*

Steven M. Ruhl, Plaintiff

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

Steven W. Ruhl
**Plaintiff/Petitioner**

vs.

Walmart - Lakewood  #3537
**Defendant(s)/Respondent(s)**

NO. 10-5065 BHS

**APPLICATION TO PROCEED IN FORMA PAUPERIS, SUPPORTING DOCUMENTATION AND ORDER**

FILED ___ LODGED
___ RECEIVED
FEB 0 2 2010
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY ___ DEPUTY

I, Steven M. Ruhl, declare I am the plaintiff/petitioner in the above-entitled proceeding; that, in support of my request to proceed without being required to prepay fees, costs or give security therefor, I state that because of my poverty, I am unable to pay the costs of said proceeding or five security therefor; that I believe I am entitled to relief. The nature of my action, defense, or other proceeding or the issues I intend to present are *briefly* stated as follows: Violations of the Americans with Disabilities Act, violations of the company's own employment procedures, violations of the Employee Manual and the Family Medical Leave Act.

In support of this application, I answer *all* of the following questions:

1. Are you presently employed?

   ☒ Yes ▶ State the amount of your salary or wages per month, and give the name and address of your employer (list both gross and net salary): I presently perform computer-repair work - both software and hardware. I make only about $225.00 per month. I live with my mom, who supports me for the rest of my expenses.

   ☐ No ▶ State the date of last employment and the amount of the salary and wages per month which you received:

2. In the past twelve months have you received any money from any of the following sources?

   | | | Yes | No |
   |---|---|---|---|
   | a. | Business, profession or other self-employment | ☒ Yes | ☐ No |
   | b. | Rent payments, interest or dividends | ☐ Yes | ☒ No |
   | c. | Pensions, annuities or life insurance payments | ☐ Yes | ☒ No |
   | d. | Disability or workers compensation payments | ☐ Yes | ☒ No |
   | e. | Gifts or inheritances | ☐ Yes | ☒ No |
   | f. | Any other sources | ☐ Yes | ☒ No |

If the answer to any of the above is "Yes," describe each source of money and state the amount received from each during the past twelve months:

The computer work I perform as mentioned in the above section is self employment.

10-CV-05065-IFP

3. Do you own **any** cash, or do you have money in checking or savings accounts?

☐ Yes ▶ State the total value of each item (Include prison account funds):

☒ No   None worth mentioning.

4. Do you own or have any interest in any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)?

☒ Yes ▶ Describe the property and state its approximate value:

☐ No   I have a 2000 Dodge Stratus.

5. Are any persons dependent upon you for support?

☒ Yes ▶ State your relationship to those persons, and indicate how much you contribute toward their support:

☐ No   I care for my elderly mother; I am responsible for about half her care.

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed on: 2-2-10         Steve Kuhl
DATE                         SIGNATURE OF APPLICANT

---

### CERTIFICATION
### (FOR PRISONER APPLICANTS ONLY)

**Have the institution fill out the Certification portion of this application and attach a certified copy of your prison trust account statement showing transactions for the past six months.**

I certify that the applicant named herein has the sum of $_____ on account to his/her credit at (name of institution _____.

---

### ORDER OF COURT

| The application is hereby denied. | The application is hereby granted. Let the applicant proceed without prepayment of costs or fees or the necessity of giving security therefor. |
|---|---|
| United States Judge       Date | United States Judge       Date<br>or Magistrate Judge |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| Steven W. Ruhl<br><br>Plaintiff,<br><br>v.<br><br>Walmart - Lakewood Store #3537<br><br>Defendant(s). | WRITTEN CONSENT FOR PAYMENT OF COSTS FROM ANY RECOVERY UNDER LOCAL RULE CR 3(b) |

I, __Steven Ruhl__, hereby consent that any recovery in damages that I may receive in the above-captioned cause may be reduced, if so directed by the court, in such an amount as is necessary for payment of the unpaid fees and costs which are taxed against me in the course of this litigation.

DATED this __2nd__, day of __February__, 20 __10__.

_____
Signature of Plaintiff